1  William Green – SBN 129816
   Sharon Delfino Green - SBN 133703
2  DELFINO GREEN & GREEN
   1010 B Street, Suite 320
3  San Rafael, CA 94901
   Telephone: (415) 442-4646
4  Facsimile: (415) 442-4802

5
   Attorneys for Plaintiff,
6  MARK MURRAY

7               UNITED STATES DISTRICT COURT

8               NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10 MARK MURRAY,                          | Case No.:  C 08-00906 JW
11         Plaintiff,                    | **OPPOSITION TO MOTION FOR**
                                         | **SUMMARY JUDGMENT AND/OR**
12     vs.                               | **SUMMARY ADJUDICATION OF**
                                         | **ISSUES; MEMORANDUM OF**
13 THE ABBOTT SEVERANCE PAY PLAN         | **POINTS AND AUTHORITIES IN**
   FOR FORMER U.S. GUIDANT               | **SUPPORT THEREOF**
14 EMPLOLYEES, 2006 EDITION              |
15         Defendant.                    | **Date:  October 6, 2008**
                                         | **Time:  10 a.m.**
16                                       | **Place: Courtroom 8**
                                         | **Judge: Hon. James Ware**
17

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................1

INTRODUCTION ..........................................................................1

FACTUAL AND LEGAL ANALYSIS OF ABBOTT'S MOTION .....................1

    A.    Contrary to Abbott's Assertion, Murray Did Not Insist That the Post-close Position "Replicate" Each and Every One of His Pre-close Duties. ........... 1

    B.    Abbott Still has not Adequately Addressed its Unequivocal Admission that "His Job was Eliminated." ...................................................2

        1.    Background of Ms. Bonn's Notes ...................................2

        2.    Ms. Bonn's Notes Show That the Reason She Concluded That Murray's Job Was Eliminated Was Because He Would No Longer Have Responsibility for Two of the Three Companies in Which He Served ..................................................................3

        3.    Abbott's Inadequate Response to Being Confronted with Ms. Bonn's Notes ..........................................................3

    C.    The Plan Administrator Had No Authority to Re-write the Plan ............. 4

    D.    The Reference to the Amount Murray Received Under Another Plan is Irrelevant, Designed to Prejudice This Court Against Murray, and Evidence of Bad Faith on the Part of Abbott ............................5

    E.    More on The Standard of Review and Application to This Case ............. 6

    F.    Abbott's Authorities on "Functional Equivalence" Do Not Support its Position – to the Contrary, to the Extent They Are Relevant at All, They Support Murray's Position That He Was Not Offered a Functionally Equivalent Position ................................................7

    G.    Although Murray's Moving Papers Discussed the Case in Terms of an Abuse of Discretion, Abbott Correctly Raises the Issue of Conflict of Interest ........8

CONCLUSION .........................................................................9

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Awbrey v. Pennzoil Co.*,
    961 F.2d 928 (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7,8

*Estate of Shockley v. Alyesda Pipeline Service Co.*,
    130 F.3d 403 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6,7

*Firestone Tire & Rubber Co. v. Bruch*
    489 US 101 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kolkowski v. Goodrich Corp.*,
    448 F.3d 843 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Metropolitan Life Ins. Co. v. Glenn*
    554 U.S. __, 128 S.Ct. 2343 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Oster v. Barco of California Employees' Retirement Plan*,
    869 F.2d 1215 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Otero v. Pharmacia Corporation*,
    466 F.3d 13 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Richardson v. Pension Plan of Bethlehem Steel Corp.*,
    112 F.3d 982 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Statutes** **Page(s)**

29 U.S.C. § 1022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff, Mark Murray ("Murray") hereby submits the following Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment or Summary Adjudication.

## I. INTRODUCTION

Pursuant to the parties stipulation and the Court's Case Management Order, Murray and Abbott filed Cross Motions for Summary Judgment/Adjudication on August 22, 2008. In his Motion, Murray set forth detailed facts, arguments, and authorities showing that the Plan Administrator's act and omissions constituted an abuse of discretion, and that Murray was (and still is) entitled to benefits under the Abbott Severance Pay Plan for Former U.S. Guidant Employees, 2006 Edition ("the Abbott Severance Plan"). Rather than repeating the matters stated in the moving papers, the parties have agreed that their respective moving papers can be incorporated by reference. As such, Murray hereby incorporates his moving papers by reference as if set forth in full.

In addition to the matters set forth in Murray's moving papers, Murray hereby offers the following opposition to Abbott's Motion.

## II. FACTUAL AND LEGAL ANALYSIS OF ABBOTT'S MOTION

### A. Contrary to Abbott's Assertion, Murray Did Not Insist That the Post-close Position "Replicate" Each and Every One of His Pre-close Duties.

In Mr. Fussell's March 19, 2007 letter (and again in the moving papers) Abbott attempts to portray Murray as insisting that the post-close position "replicate" each and every one of his pre-close duties. (Abbott's Brief at 7:18-21; AR 51) As shown in Murray's moving papers and in the Administrative Record itself, that is not and never was Murray's position. Instead, when Abbott claimed that the duties of the two positions were essentially the same, Murray gave Abbott a list of the duties and responsibilities for the pre and post close positions, pointing out that the post-close position had significantly less responsibility in terms of leadership, revenue base, as well as financial and non-financial duties and responsibilities. In fact, rather than

1  relying on generalities and conclusory statements as Abbott did, Murray repeatedly provided
2  detailed analysis of exactly how and why the post-close position was not even close to being the
3  functional equivalent to his pre-close position.[1]
4        Contrary to Abbott's assertion, Murray has never claimed that functional equivalence
5  required replication of each and every one of his pre-close duties.  However, he does contend
6  that in order to be the functional equivalent, the post-close position should have been similar in
7  the areas of responsibility, authority, visibility, corporate impact, reporting level and other
8  similar objective measures of corporate hierarchy.

      **B.    Abbott Still has not Adequately Addressed its Unequivocal Admission that "His Job was Eliminated."**

      **1.    Background of Ms. Bonn's Notes**

Several e-mails contained in the Administrative Record make it clear that Abbott's In-house counsel, Maxine Bonn, performed the investigation regarding the issues raised by Murray's claim under the Abbott Severance Plan. (AR 27-31) In an e-mail from Elizabeth Cushman to Bob Boehm and Maxine Bonn, Ms. Cushman asks Mr. Boehm if he can "get Max and I answers to [several] questions." (E-mail dated 7/26/2006 at 4:25 p.m. – AR 31) Ms. Cushman asks Mr. Boehm to "please reply to Max as well." (AR 31) The next e-mail is from Ms. Bonn to a large group of Abbott employees with a "proposed letter to Mark Murray for Jim Coppens' eventual review." (See AR 30; however, the draft letter itself is nowhere to be found in the AR) In response to Ms. Bonn's draft letter, Abbott employee Mike Meyer says: "Thanks Max for 'taking the plunge'" – presumably a reference to Ms. Bonn's willingness to take on the investigatory duties as well as preparation of the missing "proposed" letter. (AR 30)

---

[1] Murray also repeatedly demonstrated that the post-close position represented a drastic reduction in authority, reporting, corporate impact and visibility. In fact, Murray pointed out to Abbott that *the proposed post-close position was a junior position that Murray had not been in for over 17 years* (AR 22) and that in that position, *he would report to a manager one level lower than he had at Guidant*.

---

Opposition to Motion for Summary Judgment and/or  
Summary Adjudication; MPA in Support Thereof             2                     Case No. C 08-00906 JW

1          **2.**       **Ms. Bonn's Notes Show That the Reason She Concluded That**
2                   **Murray's Job Was Eliminated Was Because He Would No Longer**
3                   **Have Responsibility for Two of the Three Companies in Which He**
4                   **Served**

5        It is against this background that Ms. Bonn's notes must be viewed. Again, not once,
6 but *twice*, Ms. Bonn clearly and unequivocally states: "His job was eliminated." (AR 33 and 34)
7 In fact, the first such statement is followed immediately by sub-headings with the initials of the
8 companies where Murray previously served and arrows showing that two of the three positions
9 were eliminated. Cohn explained the notes as follows: "the reference to 'his job was
10 eliminated'" refers to "Murray's layoff as Vice President of Finance for Guidant Vascular
11 Intervention, Cardiac Surgery and Endovascular Solutions, reporting to Keith Brauer, VP of
12 Finance and Chief Financial Officer of Guidant. The reference indicates that CS (Cardiac
13 Surgery) was absorbed into BS (Boston Scientific); Endovascular Surgery went to a different
14 Abbott leader, Chip Hance, and Vascular Intervention (VI) became CT ( Cardiac Therapies)
15 inside of Abbott." (AR 36-37)[2]

16        Put simply, Ms. Bonn was acknowledging that one of the three companies Murray
17 served in (CS) was sold to another company, one was transferred to a different division of
18 Abbott under the direction of Chip Hance (ES), and only one company remained. Given that
19 investigation, it is not at all surprising that Ms. Bonn concluded that "his job was eliminated."

20         **3.**       **Abbott's Inadequate Response to Being Confronted with Ms. Bonn's**
21                  **Notes**

22        When confronted with this admission by its own in-house attorney/investigator, Abbott's
23 entire response consisted of the following: "In your Appeal Supplement, you assert that the
24 handwritten notes constitute evidence that Abbott had determined that Mr. Murray's position
25 was being eliminated. While the notes you cite were part of the information gathering process,

---

[2] Ms. Bonn also said: "Scope may be different. We don't want to include level like ex-7 level - Vice president." (AR 35)

---

the duty of plan interpretation and decision making falls to the Plan Administrator and his delegates." (AR 51 – March 19, 2007 letter from Mr. Fussell)

What this entire sentence means is somewhat unclear. However, one thing is very certain – Abbott is admitting that Ms. Bonn's conclusion that Murray's "job was eliminated" was part of its information gathering process regarding his claim for benefits under the Abbott Severance Plan.

In its moving papers, Abbott's attorneys were not able to do much better. They repeated the Plan Administrator's statement that Ms. Bonn's notes were part of the information gathering process as well as his statement that the ultimate decisions on plan interpretation were his and not his delegates. (Abbott's Brief at 7:22-26) Most significantly, however, the only way that Mr. Fussell or Abbott's attorneys were able to come to a different conclusion on the "job elimination" issue was through an after-the-fact re-writing of the Plan. Under the guise of "interpretation," Abbott states: "the Plan Administrator interpreted the term job elimination to 'involve situations where business exigencies require downsizing or the complete elimination of a position due to functional redundancies within the Abbott organization." (Abbott's Brief at 7:12-14; AR 51) Regardless of what the right to interpret the terms of the Plan means, it certainly cannot give the Plan Administrator the right to simply write-in new provisions after a claim for benefits has accrued.

Finally, and perhaps most importantly, Abbott also goes to great lengths to emphasize that the plan allows the Plan Administrator to delegate his duties. (Abbott Brief at 9:11-18; AR 6) The record here (AR 27-30 and 32-35) shows unequivocally that the Plan Administrator did just that – he assigned (delegated his responsibility) to Ms. Bonn to investigate Murray's claim and reach conclusions. Having done so, he should be estopped from later arbitrarily rejecting those conclusions, nor should he be able to nullify those conclusion by "writing in" new plan provisions.

**C.     The Plan Administrator Had No Authority to Re-write the Plan**

As stated above, the Plan Administrator purported to "interpret" the term "job

---

elimination" as to only involve "situations where business exigencies require downsizing or the complete elimination of a position due to functional redundancies within the Abbott organization." (AR 51) Such an "interpretation" is not permissible. According to the Ninth Circuit, when a term is not defined by the plan, the Court must give it "an ordinary and popular" reading "as would a [person] of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir.1997). The Sixth Circuit has also added that "a summary plan description of any employee benefit plan ... shall be written in a manner calculated to be understood by the average plan participant...."). *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir.2006); see also 29 U.S.C. § 1022.

How possibly could a person of average intelligence or experience understand that the Plan Administrator would all of a sudden decide that "job elimination" didn't really mean "job elimination" except in situations where "business exigencies require downsizing or the complete elimination of a position due to functional redundancies within the Abbott organization"? The answer – one couldn't unless he/she were prescient. And, is a Plan "written in a manner calculated to be understood by the average plan participant" if it requires the after-the-fact addition of such a key provision? Answer: No chance.

The Plan Administrator's "interpretation" is not an interpretation – it's a re-write. As such it is not part of the Plan and should not be considered as part of this claim except to the extent that it proves the level to which Abbott was willing to stoop to deny this valid claim. That is an abuse of discretion if ever there was one.

    **D.**    **The Reference to the Amount Murray Received Under Another Plan is Irrelevant, Designed to Prejudice This Court Against Murray, and Evidence of Bad Faith on the Part of Abbott**

When the Administrative Record was sent to Murray's counsel for review, it contained a document showing that Murray had been paid under the Guidant Corporation Change In Control Severance Pay Plan For Select Employees" ("the Guidant Severance Plan"), as well as the

1  amount of such payment.  Counsel for Murray objected to the inclusion of this document on the
2  grounds that it was irrelevant to the pending claim and was only being included to prejudice the
3  Court against Murray.  Counsel for Abbott responded by stating that it was *only* being included
4  in the Administrative Record in an abundance of caution to ensure that there was no claim by
5  Murray that benefits were owed under the Guidant Severance Plan.  Counsel's representation
6  was accepted.

7  Not only did Abbott's attorneys mention the Guidant Severance Plan and the claim, they
8  went out of their way to use *both the payment and the amount of the payment* as "evidence" that
9  the Plan Administrator had no conflict of interest because he paid Murray under the other plan.
10  (Abbott Brief at 15:4; see also, Abbott Brief at 5:26)

11  It is Murray's view that this other plan and/or payments thereunder is entirely irrelevant
12  to the issues being determined by this Court and that the real purpose for inclusion is to unfairly
13  prejudice this Court against Murray.  As such, it should not be considered.  However, if the
14  Court decides to consider this payment, the Court may also want to consider that the reason
15  Murray's claim under the Abbott Severance Plan was denied was that the Plan Administrator
16  and other "powers that be" at Abbott were angry and frustrated by the fact that Murray appeared
17  to be entitled to payment under both plans and *that* was the reason they trumped up a denial of
18  benefits under the Abbott Severance Plan.

19  **E.    More on The Standard of Review and Application to This Case**

20  Murray addressed the appropriate standard of review in his moving papers.  However,
21  the following citations and propositions *by Abbott* are worth noting:

22  *Estate of Shockley v. Alyesda Pipeline Service Co.*, 130 F.3d 403, 405 (9th Cir. 1997):
23  The Plan Administrator's decision must be "rational," "based upon a reasonable interpretation
24  of the plan's terms, and made in good faith.  (Abbott's Brief at 9:21-27)

25  *Oster v. Barco of California Employees' Retirement Plan*, 869 F.2d 1215 (9th Cir.1988):
26  The Plan Administrator's decision is not an abuse of discretion if it is "based on a reasonable
27  interpretation of the plans terms and was made in good faith."  (Abbott's Brief at 10:5) "The
28

---
Opposition to Motion for Summary Judgment and/or
Summary Adjudication; MPA in Support Thereof                     6                     Case No. C 08-00906 JW

critical inquiry in this case therefore is whether the Committee's denial of Oster's request for a lump-sum distribution of his accumulated benefits was based on a reasonable rationale or whether their decision was unreasonable ...." *Id.*

The question, therefore, according to the authorities cited by Abbott is whether there is a rational and reasonable basis for Abbott's denial of Murray's claim. As shown in Murray's moving papers and herein, there is no rational or reasonable explanation of Abbott's decision. To the contrary, Abbott failed to address the detailed analysis provided by Murray, ignored its own delegate's reasoned conclusion on the issue of "job elimination," relied on extremely general and conclusory statements, repeatedly mischaracterized Murray's pre-close positions and responsibilities, and failed to ever provide Murray with any written offer or post-close job description despite the fact that he raised serious questions about the lack of similarity between the pre and post close positions.

Put frankly, there is no rational or reasonable basis for Abbott's denial of Murray's claim. The denial is, therefore, an abuse of discretion even under the authorities cited by Abbott.

**F.     Abbott's Authorities on "Functional Equivalence" Do Not Support its Position – to the Contrary, to the Extent They Are Relevant at All, They Support Murray's Position That He Was Not Offered a Functionally Equivalent Position**

In the first case cited by Abbott – *Awbrey v. Pennzoil Co.*, 961 F.2d 928, 931 (10th Cir. 1992) – the court expressly found that the new company "retained all of the plaintiffs as employees at the potash mine, *at the same positions* and salaries." *Id.* at 931 (Emphasis added). In fact, the court noted that the only differences in the old job and the new job were "minor" differences in employment benefits. *Id.* The Court did *not* deal with a question of "functional equivalence."

Here, as shown in detail in the AR and Murray's moving papers, the positions were not at all the same. In fact, Murray presented detailed explanations of how they were quite different

---

1  and how the post-close position represented a significant reduction of responsibility, scope,
2  supervision, authority, visibility, reporting and other factors. That is nothing like the situation in
3  *Awbrey* where the jobs were the same.

4  In the next case cited by Abbott – *Otero v. Pharmacia Corporation*, 466 F.3d 13 (1st Cir.
5  2006) – the court focused in on the fact that the new job provided a "substantially similar level
6  of responsibility" as the old job.  Again, Murray showed just the opposite – that the post-close
7  position represented a drastic reduction in responsibility (*e.g.*, elimination of entire areas of
8  authority, reporting to a lower level manager, supervision of far fewer employees, etc.).  As
9  such, the *Otero* case actually supports Murray's position, not Abbott's.

10  **G.   Although Murray's Moving Papers Discussed the Case in Terms of an**
11  **Abuse of Discretion, Abbott Correctly Raises the Issue of Conflict of**
12  **Interest**

13  Abbott correctly observes that if benefits will be payable out of the Plan Administrator's
14  own funds, the administrator may have a conflict of interest in making claims decisions and that
15  conflict should be weighed as a factor in determining whether the administrator abused its
16  discretion.  See, *Firestone Tire & Rubber Co. v. Bruch* (1989) 489 US 101, 115, 109 S.Ct. 948,
17  957; *Metropolitan Life Ins. Co. v. Glenn* (2008) 128 S.Ct. 2343, 2350.  The administrator's
18  conflict of interest does not change the standard of judicial review.  Rather, it is one of several
19  different factors taken into account when judges review benefit denials. *Metropolitan Life Ins.*
20  *Co. v. Glenn, supra,* 128 S.Ct. at 2351.

21  The administrator's conflict of interest "should prove more important ... where
22  circumstances suggest a higher likelihood that it affected the benefits decision" and of less
23  importance (perhaps no importance) "where the administrator has taken active steps to reduce
24  potential bias and to promote accuracy, for example, by walling off claims administrators from
25  those interested in firm finances, or by imposing management checks that penalize inaccurate
26  decision-making irrespective of whom the inaccuracy benefits." *Metropolitan Life Ins. Co. v.*
27  *Glenn, supra,* 128 S.Ct. at 2351.

28

1  Abbott has put forth no evidence that it walled off claims administrators from those
2  interested in firm finances, or that it imposed management checks that penalize inaccurate
3  decision-making irrespective of whom the inaccuracy benefits.  In fact, the e-mails at AR 27-30
4  show just the opposite – many high ranking Abbott executives responsible for the companies
5  finances appear to have been an integral part of the claim denial process.  That, in and of itself,
6  demonstrates a conflict of interest sufficient for the Court to consider in deciding whether to
7  reverse the decision of the Plan Administrator.
8  On many levels this case reeks of conflict of interest – a Plan Administrator that refuses
9  to accept his own attorney/investigator's twice-stated conclusion that Murray's job was
10 eliminated; a Plan Administrator who literally re-writes the Plan in order to avoid paying a
11 legitimate claim; a Plan Administrator who completely fails to address the detailed analysis
12 provided by the claimant on the issue of functional equivalence; a Plan Administrator who
13 literally refuses to acknowledge that he is repeatedly misstating the claimant's pre-close title and
14 responsibilities.  These, as well as the other bad faith conduct detailed in Murray's moving and
15 opposing papers smack of conflict of interest. There is simply no other rational explanation for
16 the pattern of conduct displayed by Abbott.

17 **III.    CONCLUSION**

18 Murray asks only that he be given a fair shake – that someone without an axe to grind
19 take a look at the pre and post close positions and make a fair and unbiased determination of
20 whether he was offered a "functionally equivalent" position.  Murray is quite confident that a
21 neutral body such as this court will see that Ms. Bonn was right, that his position was
22 eliminated, and that the  dramatically watered down position he was offered was not
23 functionally equivalent in any way.  Put succinctly, the new position was at a lower level in the
24 corporate hierarchy, involved supervision and responsibility over significantly fewer personnel,
25 involved responsibility for a significantly lower valued entity, and most importantly, involved
26 only one minor aspect of the responsibilities and functions Murray performed prior to Close.
27 Murray respectfully requests that this court deny Abbott's summary judgment and award
28

1  him the benefits he is entitled to under the Plan, pre-judgment interest and attorneys fees.

Dated: September 5, 2008                DELFINO GREEN & GREEN


                                        _____/s/_____
                                        William Green
                                        Attorney for Plaintiff,
                                        MARK MURRAY